## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**BOWLERS' ALLEY, INC.**
**d/b/a EASTLAND BOWLING**
**CENTER**, a Michigan corporation,

                    Plaintiff,

v

**THE CINCINNATI INSURANCE**
**COMPANY**,

                    Defendant.

Case No. 2:13-cv-13804-PDB-MJH
Hon. David M. Lawson
Magistrate Michael Hluchaniuk

_____/

CLIFFORD J. DeVINE (P27681)
DAVID J. DeVINE (P70012)
**BUTZEL LONG**
Attorneys for Plaintiff
150 W. Jefferson Suite 100
Detroit, MI 48226
(313) 225-7000
devinec@butzel.com
devine@butzel.com

ALAN G. GREGORY (P28486)
**GREGORY AND MEYER, P.C.**
Attorneys for Def. Cincinnati
340 E. Big Beaver Rd., Ste. 520
Troy, MI  48083
(248) 689-3920
agregory@gregorylaw.com

_____/

## DEFENDANT THE CINCINNATI INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO 12(B)(6) AND MEMORANDUM OF LAW

## ORAL ARGUMENT REQUESTED

**NOW COMES** Defendant, Cincinnati Insurance Company by and through its attorneys, Gregory and Meyer, P.C., moves this Court to dismiss the Complaint of Plaintiff Bowlers' Alley, Inc. d/b/a Eastland Bowling Center pursuant to Fed.R.Civ.P. 12(b)(6), as more fully discussed in the attached Memorandum of Law.

Pursuant to E.D. Mich. LR 7.1, there was a conference between the attorneys on September 6, 2013 in which Cincinnati's counsel explained the nature and legal basis of the relief requested in this motion but did not obtain concurrence.

/s/ Alan G. Gregory
ALAN G. GREGORY
**GREGORY AND MEYER, P.C.**
Attorneys for Defendant
340 E. Big Beaver, Ste. 520
Troy, MI 48083
(248) 689-3920
P28486
Dated:  November 15, 2013          agregory@gregorylaw.com

1

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether Plaintiff's Complaint should be dismissed because of Plaintiff's breach of the "Legal Against Us" clause by failing and refusing to comply with the Loss Conditions of the policy, including production of requested documents and submission to an examination under oath, which are conditions precedent to coverage and suit?

Cincinnati submits the answer is "yes"

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 12(b)(6)

*Reynolds v. Allstate Ins. Co.*, 123 Mich.App. 488; 332 N.W.2d 583 (1983)

*Lee v. Auto Owners Ins. Co.*, 201 Mich.App. 39; 505 N.W.2d 886 (1993), *rev'd in part on other grounds* 208 Mich.App. 207; 527 N.W.2d 54 (1994), *on second remand* 218 Mich.App. 672; 554 N.W.2d 610 (1996)

*Knox v. Knox*, 337 Mich. 109, 118; 59 N.W.2d 108 (1953)

*Yeo v. State Farm Ins. Co.*, 219 Mich.App 254; 555 N.W.2d 893 (1996)

MCL 500.2833

*Barnes v. State Farm Fire and Casualty Co.*, 623 F. Supp. 538, 540 (E.D. Mich. 1985)

*Thomson v. State Farm Ins. Co.,* 232 Mich.App. 38; 592 N.W.2d 82 (1998)

*Allen v. Michigan Basic Property Ins. Co*, 249 Mich.App. 66; 640 N.W.2d 903 (2001)

*Graves v. State Farm Mut. Ins. Co.*, No. 289822, 2010 WL 673361 (Mich. App. Feb. 25, 2010)

## BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6)

### I.     INTRODUCTION

This insurance coverage lawsuit arises out of a May 17, 2012 water loss to Bowler's Alley bowling center.  As a result of the loss, Plaintiff claims that its real and personal property suffered damage, which Plaintiff believes is compensable under Cincinnati Insurance Company's ("Cincinnati") insurance policy. As alleged by Plaintiff in its Complaint (**Doc #1**), Cincinnati has paid in excess of $600,000 to Plaintiff for covered loss to date.  However, significant legal and factual questions exist as to whether any additional amounts claimed by Plaintiff are covered by Cincinnati's insurance policy.  As Plaintiff's Complaint and exhibits make clear, Cincinnati sought the cooperation of Plaintiff during the course of Cincinnati's claims investigation and has repeatedly requested the production of specific documents pertinent to the issues of coverage pursuant to the Loss Conditions of the policy. Cincinnati has also requested that Plaintiff submit to an Examination Under Oath, also required by the Loss Conditions of the policy. Plaintiff has breached the Loss Conditions ("Duties In The Event of Loss or Damage") under the policy by failing and refusing to provide the specifically identified documents for review and consideration by Cincinnati and by ultimately refusing to submit to Examinations Under Oath upon the request of Cincinnati. Rather than complying with its contractual duties, Plaintiff has instead breached the "Legal Action Against

Us" condition of the policy which precludes any legal action against Cincinnati until there has been full compliance with all of the terms of the policy, including the insured's policy "Duties".

Plaintiff's Complaint alleges a single count for "Breach of Contract" against Cincinnati.  However, as more fully discussed below, Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim for breach of contract under Cincinnati's policy.  Plaintiff has wilfully failed to comply with the policy conditions to cooperate, produce documents and submit to Examinations Under Oath before commencing the instant lawsuit.  Upon the filing of Plaintiff's Complaint, Cincinnati's counsel notified Plaintiff's counsel of its policy breach and gave Plaintiff the opportunity to cure by dismissing the Complaint, producing the requested documents and submitting to an Examination Under Oath ("EUO") (**Exhibit A**) in accordance with local rule 7.1.  However, Plaintiff has refused to comply with these policy prerequisites to litigation, underscoring Plaintiff's willful breach.  Plaintiff's conduct, as shown in the exhibits to the Complaint, establishes a pattern of non-cooperation with Cincinnati, mandating dismissal of Plaintiff's Complaint under *Thomson v. State Farm Ins. Co.,* 232 Mich.App. 38; 592 N.W.2d 82 (1998) and *Allen v. Michigan Basic Property Ins. Co*, 249 Mich.App. 66; 640 N.W.2d 903 (2001).

## II.   STATEMENT OF FACTS

### A.   Background

For the purposes of this Motion only, Cincinnati relies only on the facts plead in Plaintiff's Complaint and the information contained in the exhibits attached to Plaintiff's Complaint[1] which are pertinent to this Motion.

Cincinnati issued Policy Number ENP 007 25 59 to Bowler's Alley.  The subject policy was in force from March 17, 2011 to March 17, 2014 (see **Doc #1**, ¶ 3; see also **Doc #1-2**, Policy and **Exhibit B**, Certified Policy).  Plaintiff operated a bowling center in Eastland, Michigan (**Doc #1** at ¶ 1).  On or about May 17, 2012, Plaintiff suffered a loss when a pipe burst in the building which Plaintiff alleges caused damage to the wooden bowling lanes, lighting and "other parts of the building and personal property." (**Doc #1** at ¶8).  Plaintiff made claim for the loss to Cincinnati (*id.*, ¶ 10).

By the end of September 2012, Cincinnati paid Plaintiff in excess of $600,000.  However, based on Plaintiff's claims, it was apparent to Cincinnati that additional coverage issues existed which it outlined in its February 1, 2013 reservation of rights letter (**Doc #1** at ¶11 and **Doc #1-3**).

Thereafter, Cincinnati requested that Plaintiff submit a Sworn Statement in Proof of Loss ("SSPOL") for its claims under the policy (**Doc #1** ¶12). Plaintiff

submitted its SSPOL to Cincinnati on June 18, 2013 (**Doc #1** ¶13 and **Doc #1-4**). Because Plaintiff's SSPOL was incomplete, did not include all documentation previously requested, presented new information and raised significant coverage issues relating to various aspects of the claim which were still under investigation, Cincinnati properly and timely rejected Plaintiff's SSPOL and made specific records and information requests (**Doc #1**, **Doc #1-5**, Page ID 89-99).

Cincinnati's July 17, 2013 Rejection of Proof of Loss, Reservation of Rights and Records Request letter included a very detailed outline of information and documentation that Cincinnati requested that Plaintiff provide so that the claim and coverage review could continue including, but not limited to:

> Please provide all reports, investigations, photographs, lab reports and any other documentation showing the existence and cause of any mold you contend has been discovered for our review. Coverage questions exist as to the extent, if any, to which any coverage is afforded for lanes that did not sustain direct physical loss by the May 17, 2012 water event and the applicability of the "fungi" exclusion and coverage extension referenced above.
>
> * * *
>
> A coverage question exists as to whether the water leak caused any direct physical loss to any electrical fixture or apparatus listed in the First Day and Clemens Electric proposals. If you have any other documentation, photographs, damaged electrical artifacts or other information to show that there was direct physical loss to any one or more of the electrical fixtures and lighting proposed for replacement, please provided immediately for review.

---

[1]   Cincinnati expressly reserves its right to contest all of the allegations in Plaintiff's Complaint in this litigation if this Court does not grant this Motion to Dismiss.

\* \* \*

A coverage question exists as to whether the named insured incurred any compensable expense for Debris Removal within 180 days from May 17, 2012, as required by the insurance policy. We again request that you provide such documentation to us for review immediately.

\* \* \*

Please provide all reports, photographs, analysis, information and supporting documentation showing the date, cause, extent and amount of loss for which claim is being made. Please note that estimates for replacement of any property that do not provide a detailed analysis and description of the cause and extent of the claimed loss to the main counter will not be sufficient for us to continue our coverage investigation.

\* \* \*

Please provide all documents, information, descriptions and explanations for this alleged general contractor fee for our review.

\* \* \*

Please provide all documents, invoices, bills and purchase records for these items for our coverage review. Finally, please provide time sheets, work descriptions, invoices or billings and documentation of actual payment for the "Labor Hours to May 1, 2013" included within Exhibit 3 so that we can continue our review of coverage and this aspect of your claim.

\* \* \*

We acknowledge that you have met with our retained accountant, Bob Walworth, to review the financial statements, documentation and financial representations you have submitted to Cincinnati Insurance Company, but you must present the basis for the calculation of your claim, as well as consider the limitations of the hypothetical measure of the Period of Restoration, as set forth above. Please provide such information and documentation to us as soon as possible so that we can continue our review of coverage and your claim.

\* \* \*

Please provide detailed descriptions, evidence of payment, purpose of
expense and the amount claimed, after taking into consideration the
limitations of the Additional
Coverage for Inventory or Appraisal.

(**Doc #1-5**, Page ID 92-99).

In addition to the above requested information, Cincinnati specifically
advised Plaintiff in its July 17, 2013 correspondence that Plaintiff had not yet
satisfied the policy "Duties in the Event of Loss Or Damage" and that Cincinnati
was requesting that Plaintiff submit to an Examination Under Oath ("EUO"):

> This is not a denial of your claim. It should be expressly understood
> that The Cincinnati Insurance Company's investigation and review of
> coverage under the policy and your claim have not yet been
> completed and no claim decisions have yet been made. You have not
> satisfied all Duties In The Event Of Loss Or Damage set forth in the
> policy and our February 1, 2013 Reservation of Rights letter and
> subsequent correspondence. Additional documentation and
> information from you will be necessary so that we can complete our
> investigation and review of your claim.
>
> In addition to requesting the documentation identified above, we will
> also ask our attorneys, Gregory and Meyer, P.C., to arrange for
> Examinations Under Oath pursuant to the policy Duties. Please
> forward the requested documentation to us as soon as possible so that
> we can continue our analysis of your claim and coverage under the
> policy. Mr. Whaley will contact you to arrange for the lane inspection.

(*Id.* at Page ID 99).

As alleged by Plaintiff, it responded to Cincinnati's July 17, 2013
correspondence and document requests by refusing to provide any further
information or documentation (**Doc #1** ¶16 and **Doc #1-6**).

In response, Cincinnati once again urged Plaintiff to produce the previously requested documentation and information outlined in its July 17, 2013 correspondence (**Doc #1** ¶16 and **Doc #1-7**).   Instead of complying with Cincinnati's requests, Plaintiff commenced this litigation on September 6, 2013 (**Doc #1**).

In response to Plaintiff's notice of filing suit on September 6, 2013 and as part of its requirement to meet and confer, Cincinnati's counsel advised Plaintiff's counsel of its breach of the very policy provisions supporting this Motion and provided Plaintiff an opportunity to cure by email dated September 6, 2013:

> Respectfully, your client's lawsuit constitutes breach of the insurance contract because Bowlers Alley, Inc. has not complied with the Loss Conditions (Duties in the Event of Loss or Damage) of the policy by providing the information, books and records repeatedly requested by Cincinnati Insurance Company (see, e.g., letters dated March 15, 2013, April 4, 2013, July 17, 2013 and August 30, 2013) or the physical artifacts/evidence showing any water loss-related damage to the overhead lighting systems, among other requests, for review, investigation and a coverage decision. Please keep in mind that most of your client's vastly expanded claim was not even tendered to Cincinnati Insurance Company until the "interim" Sworn Statement in Proof of Loss was presented on June 18, 2013. Further, your client has not submitted to Examinations Under Oath as requested by Cincinnati Insurance Company in its correspondence and as attempted in my email earlier today. In part, the policy provides:
>
> D. Legal Action Against Us
> No one may bring a legal action against us
> under this Coverage Part unless:
> 1. There has been full compliance with all of
> the terms of this Coverage Part;

7

The purpose of my email is to provide you and your client with an opportunity to cure Bowlers Alley's current breach of the Loss Conditions of the insurance contract by dismissing its Complaint without prejudice, providing the requested books and records to the extent they exist, providing or exhibiting the damaged electrical artifacts and other property for inspection, submitting to Examinations Under Oath and returning to the loss investigation and adjustment process. Otherwise, the knowing and intentional refusal by Bowlers Alley, Inc. to comply with the policy's Loss Conditions (conditions precedent) constitutes a separate and independent defense to payment under the terms and conditions of the insurance contract and Michigan law.

I trust you and your client will give this opportunity to cure serious consideration and advise me of your client's decision accordingly. If your client decides to reject this opportunity to cure, attached you will find a Waiver of Summons form to fill out and return to me for my signature on behalf of The Cincinnati Insurance Company pursuant to FRCP 4(d). With the waiver form, also please provide a copy of the complaint and any exhibits. [**Exhibit A**]

To date, Plaintiff has refused to cure its breach, thus resulting in the necessity of this Motion.

## B.   <u>Pertinent Policy Provisions</u>

The policy contains certain "Loss Conditions" including pertinent "Duties in the Event of Loss", which provide in part as follows:

**SECTION D. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

***

## 3.   <u>Duties In The Event of Loss or Damage</u>

8

**a.** In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

* * *

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

**(7)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

* * *

**b.** We may examine any insured under oath, · while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed. [FM 101 04 04, Page 27-28 of 35]

* * *

9

Further, the Commercial Property Conditions of the policy provide in pertinent part as follows:

**D.**   **Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**1.**   There has been full compliance with all of the terms of this Coverage Part; and

**2.**   The action is brought within 2 years after the date on which the direct physical "loss" occurred. [FA 450 11 04, Page 1 of 2]

The Michigan Changes endorsement to the policy (FA 4037 MI 09 05) adds the following to the Legal Against Us clause:

**E.**   The following is added to the Legal Action **Against Us** Commercial Property Condition:

The time for commencing an action against us is tolled from the time you notify us of the "loss" until we formally deny liability for the claim.

(**Exhibit B**, Certified policy).

### III.   <u>LEGAL DISCUSSION</u>

**A.**   <u>**Standard Of Review**</u>

The standard of review for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997). *Columbia Natural Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995).

As this Court recently noted in *Cromer v. Safeco Ins. Co. of Am.*, 2:09-CV-13716, 2010 WL 1494469 (E.D. Mich. Apr. 14, 2010):

> In deciding a Fed. R. Civ. P. 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Kottmeyer v. Maas,* 436 F.3d 684, 688 (6th Cir.2006). While this standard is liberal, it does require that plaintiff's allegations rise above the level of labels, conclusions, and formulaic recitations of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also First Am. Title Co. v. Devaugh,* 480 F.3d 438, 444 (6th Cir.2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88 (6th Cir.1997). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic,* 550 U.S. at 555 (citations omitted).

When considering whether to grant a 12(b)(6) motion, the court primarily considers the complaint's allegations, but may also take into account items appearing in the record and attached exhibits. *Poly-Flex Const., Inc. v. NTH, Ltd.,* 582 F.Supp.2d 892, 901 (W.D. Mich. 2008). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). "Documents that a defendant attaches to its [12(b)(6)] motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's

complaint and are central to her claim." *Weiner v. Klais and Co., Inc,* 108 F.3d 86, 89 (6th Cir. 2008).

**B.     Plaintiff's Complaint Must Be Dismissed Due To Plaintiff's Admitted Pattern Of Non-Cooperation And Willful Failure To Produce Requested Documents and Physical Evidence And Failure To Appear For Examination Under Oath**

Cincinnati seeks dismissal of Plaintiff's Complaint because Plaintiff has failed to cooperate, has refused to produce documents and evidence verifying the claimed loss and has refused to submit to EUOs, all of which breach the Loss Conditions, which in turn constitute conditions precedent to coverage and suit under Cincinnati's policy.   An insured bears the burden of proving that it has complied with all conditions precedent in the policy before it is entitled to any recovery under an insurance policy.  *Reynolds v. Allstate Ins. Co.*, 123 Mich.App. 488; 332 N.W.2d 583 (1983);  *Lee v. Auto Owners Ins. Co., 201 Mich.App. 39; 505 N.W.2d 886 (1993), rev'd in part on other grounds 208 Mich.App. 207; 527 N.W.2d 54 (1994), on second remand 218 Mich.App. 672; 554 N.W.2d 610 (1996).* A "condition precedent" is a fact or event that the parties intend must take place before there is a right to performance.  *Knox v. Knox*, 337 Mich. 109, 118; 59 N.W.2d 108 (1953); *Yeo v. State Farm Ins. Co.*, 219 Mich.App 254; 555 N.W.2d 893 (1996); *Lee, supra*.

The public policy of the state of Michigan concerning an insured's right to sue its property insurer is embodied in MCL 500.2833:

(1) Each fire insurance policy issued or delivered in this State shall contain the following provisions:

<div align="center">*     *     *</div>

(q) *That an action under the policy may be commenced only after compliance with the policy requirements*…[emphasis added].

Consistent with Michigan's statutory mandate, Cincinnati's policy contains the following policy, which requires the insured to comply with the policy requirements as a condition of suit (in pertinent part):

**D.     Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**1.**     There has been full compliance with all of the terms of this Coverage Part . . .  [FA 450 11 04, Page 1 of 2]

As referenced above, Cincinnati's policy also contains specific Duties in the Event of Loss which require the Plaintiff to cooperate with Cincinnati's investigation, produce its books and records and other requested documentations and submit to an EUO. Therefore, the insured (Plaintiff) has contractually agreed to **condition** its right to file suit against Cincinnati on "full compliance with all of the terms of this Coverage Part", including cooperation, production of books, records and information verifying the claim and submit to an EUO.

As outlined in Plaintiff's Complaint and the documents attached thereto, Cincinnati and its counsel made at least five requests for Plaintiff to produce documents supporting its claim (March 15, 2013, April 4, 2013, July 17, 2013 and

<div align="center">13</div>

August 30, 2013) and for identification, production or inspection of the physical artifacts/evidence showing any water loss-related damage to the overhead lighting systems, among other requests, for review, investigation and a coverage decision (**Doc #1-5 and Doc #1-7**). As explained in Cincinnati's July 17, 2013 letter (**Doc #1-5**), most of Plaintiff's claim was not even tendered to Cincinnati Insurance Company until the "interim" Sworn Statement in Proof of Loss was presented on June 18, 2013 (**Doc #1-4**). Further, Plaintiff has never submitted to the EUOs as requested by Cincinnati Insurance Company in its July 17, 2013 correspondence)(**Doc #1-5**).  Cincinnati's requests for compliance with the Loss Conditions have instead been refused (*see e.g.,* **Doc #1-6; Exhibit A**).

Upon being informed that Plaintiff commenced suit (September 6, 2013), Cincinnati's counsel specifically cautioned the insured and its counsel on that same day that Plaintiff's failure to comply with Cincinnati' requests exhibited a pattern of non-cooperation and willful non-compliance which precludes payment under the policy (**Exhibit A**). *See e.g., Thomson v. State Farm Ins. Co.,* 232 Mich.App. 38; 592 N.W.2d 82 (1998), *Allen v. Michigan Basic Property Ins. Co*, 249 Mich.App. 66; 640 N.W.2d 903 (2001); and *Lee* v. *Auto Owners Ins. Co.*, *supra*. Nevertheless, despite being provided with an opportunity to cure its breach of contract, Plaintiff has chosen to willfully continue that breach by maintaining the instant lawsuit instead of appearing for the requested EUO and providing the requested documents.

In *Thomson v. State Farm Ins. Co*., *supra*, the Court of Appeals held that this type of willful non-compliance by an insured will result in a dismissal of the lawsuit with prejudice. *Thomson* set out a two-prong test to determine "willful non-compliance":

> ...We conclude that 'willful non-compliance' in the context at hand refers to a failure to or a refusal to submit to an EUO or otherwise cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a deliberate effort to withhold material information or a pattern of non-cooperation with the insurer. 232 Mich.App at 50.

Furthermore, the *Thomson* court placed insureds and their counsel on notice that the burden of establishing that the insured had not withheld material information or *to demonstrate that the insured has not engaged in a pattern of non-cooperation* would be on the **insured**:

> ...We emphasize that in future cases … the burden henceforth is on the insured to demonstrate that the insured has not deliberately withheld material information. This burden will be an extraordinarily difficult one to meet. [*Id.* at 51].… Insureds and the insured's counsel will be ill-advised to interpret our decision as anything approaching a license to disregard clearly binding contractual obligations. *Id.* at 52.

More recently, in *Graves v. State Farm Mut. Ins. Co.*, No. 289822, 2010 WL 673361 (Mich. App. Feb. 25, 2010), the Michigan Court of Appeals, following *Thomson,* dismissed an insured's claim **with prejudice** for refusing to submit to an EUO and filing suit in lieu of cooperation (just as Plaintiff has done here):

> We find the trial court correctly granted State Farm's motion. The policy unambiguously requires the insured to submit to an EUO at State Farm's request, and states that legal action may not be brought

against State Farm until the insured fully complies with the policy's provisions. State Farm requested that plaintiff and her mother submit to EUOs, and they refused to do so. Thereafter, plaintiff filed her suit. Case law holds that when an insured does not permit oral examination when required to do so, recovery under the policy is barred. *Yeo v. State Farm Ins. Co.,* 219 Mich.App. 254, 555 N.W.2d 893 (1996); *Thomson,* 232 Mich.App. at 44-45, 592 N.W.2d 82.

*See also Lee* v. *Auto Owners Ins. Co.* ("... failure to satisfy the conditions precedent prevent him from being able to state a cause of action in courts to collect the insurance money he claims he is owed."). *Supra* at 868.

The courts have recognized that providing a post-suit deposition or EUO is not the same as obtaining an EUO in the contractual setting. In *Thomson, supra,* the Court of Appeals recognized the clear distinction between the advantages to the insurer in exercising its contractual right to take an EUO and the insurer's due process right to depose the insured under the liberal discovery procedures available under the Michigan Court Rules:

The policy does not provide that depositions may be substituted for examinations under oath as appellants suggest.  Rather, *depositions and examinations under oath serve vastly different purposes.  First, the obligation to sit for an examination under oath is contractual rather than arising out of the rules of civil procedure.*  Second, an insured's counsel plays a different role during examinations under oath than during depositions.  Third, examinations under oath are taken before litigation to augment the insurer's investigation of the claim while a deposition is not part of the claim investigation process.  Fourth, an insured has a duty to volunteer information related to the claim during an examination under oath in accordance with the policy while he would have no such obligation in a deposition.  Finally, the insurer has the right to examine [the] insured independently in sworn examinations while it would have no parallel right to do so under the [Rules of Civil Procedure] . . . [*Id.* at 51].

16

*See also Allen*, *supra* at 75, n. 8 ("Plaintiff's deposition was not the equivalent of the examination under oath . . ." ); *Archie v. State Farm Fire & Cas. Co.*, 813 F.Supp 1208, 1213 (SD Miss. 1993)("Plaintiff's agreement finally to sit for a deposition, nine months after the insured moment, after plaintiff has filed a lawsuit hardly satisfies the spirit or intent of insurance policy clauses mandating oral examinations"); and *United States Fidelity and Guaranty Co. v. Wigginton,* 964 F.2d 487 (5th Cir.1992) (fact that insured waited four months to agree to submit to oral exam and consent was only until *after* filing of lawsuit, his delay was unreasonable as matter of law).

The exhibits attached to Plaintiff's Complaint clearly demonstrate that after being paid over $600,000, Plaintiff chose in June 2013 to present a vastly expanded claim in its SSPOL, with new, previously unreported items of damage and a woeful lack of pertinent documentation for claim and coverage verification purposes. Both the July 17, 2013 and August 30, 2013 letters from Cincinnati provide painstaking detail about the information and documentation necessary for review and permit a focused EUO to take place so that Cincinnati can render claim and coverage decisions on the expanded claim. Simply put, Plaintiff either does not want to provide, does not have, or never had the requested documentation and information and has filed this lawsuit as an end run around its contractual

obligations. This strategy violates the policy, Michigan law and should not be permitted by this Court.

Accordingly, Plaintiff's Complaint should be dismissed with prejudice due to Plaintiff's admitted and persistent refusal to produce requested documents and to submit to an EUO and by filing suit before fully complying with its policy conditions.

## IV.   **CONCLUSION**

For the reasons more fully outlined above, Cincinnati requests that this Court grant its Motion to Dismiss and Dismiss Plaintiff's case with prejudice.

<div style="margin-left:40%">

/s/ Alan G. Gregory
ALAN G. GREGORY
**GREGORY AND MEYER, P.C.**
Attorneys for Defendant
340 E. Big Beaver, Ste. 520
Troy, MI 48083
(248) 689-3920
P28486
agregory@gregorylaw.com

</div>

Dated:  November 15, 2013

18

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BOWLERS' ALLEY, INC.**
**d/b/a EASTLAND BOWLING**
**CENTER**, a Michigan corporation,

                Plaintiff,          Case No. 2:13-cv-13804-PDB-MJH
                                            Hon. David M. Lawson

v

**THE CINCINNATI INSURANCE**
**COMPANY**,

                Defendant.

_____/

| | |
|---|---|
| CLIFFORD J. DeVINE (P27681) | ALAN G. GREGORY (P28486) |
| DAVID J. DeVINE (P70012) | **GREGORY AND MEYER, P.C.** |
| **BUTZEL LONG** | Attorneys for Def. Cincinnati |
| Attorneys for Plaintiff | 340 E. Big Beaver Rd., Ste. 520 |
| 150 W. Jefferson Suite 100 | Troy, MI  48083 |
| Detroit, MI 48226 | (248) 689-3920 |
| (313) 225-7000 | agregory@gregorylaw.com |
| devinec@butzel.com | |
| devine@butzel.com | |

_____/

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following **Clifford J. DeVine and David J. DeVine**.

<u>/s/ Alan G. Gregory</u>
ALAN G. GREGORY
**GREGORY AND MEYER, P.C.**
Attorneys for Defendant
340 E. Big Beaver, Ste. 520
Troy, MI 48083
(248) 689-3920
P28486
agregory@gregorylaw.com